FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ MAY 21 2007
P.M.
TIME A.M.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TERREL REILY,

                Petitioner,

- against -

ROBERT ERCOLE,

                Respondent.

------------------------------------------------------------X

**MEMORANDUM AND ORDER**

1:06-cv-5402-ENV

VITALIANO, D.J.

Terrel Reily ("Petitioner") has petitioned this Court, *pro se*, for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Respondent Robert Ercole ("Respondent"), superintendent of the Green Haven Correctional Facility, has moved to dismiss the petition as time-barred. See 28 U.S.C. § 2244(d)(1)(A). For the reasons set forth below, respondent's motion to dismiss the petition on timeliness grounds is denied.

## Background

On March 12, 2001, petitioner was convicted in the New York State Supreme Court, Kings County of murder in the second degree, N.Y. Penal Law § 125.25(1), for which he was sentenced to a term of imprisonment of 25 years to life. On December 20, 2004, the New York State Supreme Court, Appellate Division, Second Department, after having remitted the case for rehearing on the admissibility of identification testimony, affirmed petitioner's conviction. People v. Reily, 13 A.D.3d 560, 787 N.Y.S.2d 657 (2d Dep't 2004). Judge Albert M. Rosenblatt of the New York State Court of Appeals denied petitioner's application seeking leave to appeal

the decision of the Appellate Division on March 4, 2005. People v. Reily, 4 N.Y.3d 834, 796 N.Y.S.2d 589, 829 N.E.2d 682 (2005). Petitioner did not seek a writ of certiorari from the United States Supreme Court. Accordingly, his conviction became final, for purposes of federal habeas review, on June 2, 2005, 90 days after leave to appeal was denied by New York's highest court. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001). Given the one-year statute of limitations applicable to federal habeas corpus petitions, see 28 U.S.C. § 2244(d)(1)(A), petitioner had until June 2, 2006 to file a timely habeas petition.

The instant petition was received and filed with this Court on September 29, 2006, nearly four months after the expiration of the statute of limitations. The petition was contained within a manila envelope, which bore a Green Haven Correctional Facility Pitney Bowes postmark indicating that the envelope was mailed on September 27, 2006 at a postage rate of $1.11. The envelope clearly states "legal mail" and, on both sides, bears a rubber-stamped date of May 16, 2006. Green Haven inmate Jabbar Collins, a prison paralegal, affirms that such date stamps are placed on outgoing envelopes by law clerks in the prison library. Aff. of Jabbar Collins, dated Apr. 23, 2007, ¶ 2. On the petition's final page, petitioner certifies "under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on May 16, 2006." Petitioner maintains that, on May 16, 2006, he deposited the envelope containing his habeas petition into a mailbox designated for outgoing inmate mail. In attempting to explain the four-month delay between his petition being deposited and mailed, petitioner submits the affidavit of inmate Ronald Benn, chairman of the inmate liaison committee, stating that delays in the processing of mail are a recurrent problem at Green Haven and that the delays were called to the attention of the prison's superintendent, who has

acknowledged the problem. Aff. of Ronald Benn, dated Apr. 23, 2007, ¶¶ 2-3.

Respondent submits the affidavit of Linda Lyder, a senior mail clerk at the correspondence unit of Green Haven Correctional Facility. Lyder affirms, based on her experience as a senior mail clerk, that inmate mail is processed promptly and mailed expeditiously upon receipt. Aff. of Linda Lyder, dated Jan. 9, 2007, ¶¶ 3, 6. She further affirms that the correspondence unit does not, in addition to postmarking, place a date stamp on outgoing mail. Id. ¶ 5. Finally, Lyder states that a review of available mail records shows that, for the week ending September 29, 2006, petitioner incurred a postage charge of $1.11. Id. ¶ 4.

### Prison Mailbox Rule

The prison mailbox rule provides that a *pro se* inmate's federal habeas corpus petition is deemed filed on the date it is given to prison officials. Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (establishing the prison mailbox rule); Noble v. Kelly, 246 F.3d 93, 97-98 (2d Cir. 2001) (extending the prison mailbox rule to federal habeas corpus petitions); Rules Governing § 2254 Cases, Rule 3(d), 28 U.S.C. foll. § 2254 (codifying the prison mailbox rule as to federal habeas corpus petitions). In cases where it is unclear when the inmate gave his petition to prison officials, courts have assumed that the petitioner submitted the petition on the same date it was purportedly signed and dated. Porter v. Greiner, No. 00-cv-6047, 2005 WL 3344828, at *7 (E.D.N.Y. Nov. 18, 2005); Corrigan v. Barbery, 371 F. Supp. 2d 325, 328 n.4 (W.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 66 n.2 (S.D.N.Y. 2004); Johnson v. Coombe, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001); Torres v. Irvin, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998). The rule is premised on the *pro se* inmate's lack of control – his "dependence on the prison mail system and lack of counsel to assure timely filing with the court." Noble, 246

F.3d at 97; Garraway v. Broome County, No. 5:03-cv-0681, 2006 WL 931729, at *3 (N.D.N.Y. Apr. 7, 2006).

When an inmate offers a sworn declaration that he submitted his legal papers on a given date, the burden then shifts to the prison to put forth some contrary evidence showing that the inmate actually submitted the papers at a later date. Cf. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) ("Under the mailbox rule, the burden is on prison authorities to prove the date a prisoner delivered his documents to be mailed."); Hill v. Melvin, No. 05-cv-6645, 2006 WL 1749520, at *6 (S.D.N.Y. Jun. 27, 2006); Rosario v. Bennett, No. 01-cv-7142, 2002 WL 31852827, at *12-13 (S.D.N.Y. Dec. 20, 2002). While the prison mailbox rule is obviously susceptible to abuse by those inmates who have no qualms in lying, the rule at least places the risk of abuse with the prison, which can take simple steps to protect against that risk. As the Supreme Court has explained,

> [t]he *pro se* prisoner does not anonymously drop his notice of appeal in a public mailbox—he hands it over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.

Houston v. Lack, 487 U.S. 266, 275, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). Thus, to protect against an inmate falsely stating when outgoing mail was submitted, a correctional facility need only adhere to the "decades-old guidance" of Houston by keeping an outgoing mail log – at least for legal mail – that allows for easy refutation of an inmate's deceitful claims. See Allen v. Culliver, No. 03-cv-0375, 2007 WL 779611, at *4 (S.D. Ala. Mar. 12, 2007). A review of

4

caselaw indicates that, at least with regard to incoming mail, Green Haven Correctional Facility has kept the type of log contemplated by the Supreme Court in Houston:

> [A]ll incoming "privileged correspondence" is recorded in a log book which the inmate signs to receive the correspondence. "Privileged correspondence" is correspondence from any federal, state or local official or agency; any official of a nation, state or tribe of which the inmate is a citizen; any attorney, approved legal representative, representative employed or supervised by an attorney, or any legal services organization. Incoming special delivery mail, *i.e.*, certified and express mail and deliveries by Federal Express or United Parcel Service, is also recorded in the log book.

Mercer v. Green Haven Corr. Facility, No. 94-cv-6238, 1998 WL 85734, at *5 n.10 (S.D.N.Y. Feb. 27, 1998).

To cut to the quick, the evidence submitted by respondent is woefully insufficient to warrant dismissal. Specifically, respondent fails to offer a mail log entry or other proof as to when petitioner submitted his habeas corpus petition for mailing; respondent fails even to explain whether Green Haven keeps a log of outgoing legal mail. Instead, respondent merely states that its records show that petitioner incurred a $1.11 postage charge for the week ending September 29, 2006. This evidence misses the mark, as respondent's motion turns not on when the petition was mailed, but instead, on how long it was held by prison officials before being mailed. Respondent's affidavit states that mail is "processed promptly" and "sorted and mailed expeditiously." Critically, the affidavit does not speak specifically to the mail at issue. Furthermore, respondent's affidavit is even vague as to Green Haven's general practice, as it uses terms like "promptly" and "expeditiously" rather than giving concrete detail on Green Haven's practice for handling outgoing mail.

The Court agrees with respondent that the passage of time is one factor that may weigh

against an inmate's claim that he mailed his legal papers earlier than is indicated by the mail's postmark or date of actual receipt by the court; the inmate's failure to follow up may in some instances be evidence that the mail was never submitted in the first place. See Allen v. Culliver, 471 F.3d 1196, 1198 (10th Cir. 2006) ("The district court may take into account any and all relevant circumstances, including any lack of diligence on the part of Allen in following up in a manner that would be expected of a reasonable person in his circumstances, in deciding whether the notice was delivered to the prison authorities."). Here, given petitioner's lack of legal sophistication and given that habeas petitions are often processed at a measured pace, it can hardly be said that a reasonable prisoner in petitioner's circumstance would be expected to follow up on a habeas petition submitted five months prior. Nor has respondent offered any evidence that there is a means through which inmates at Green Haven would be aware of whether submitted mail was, in fact, mailed.

## Conclusion

For the reasons set forth above, respondent's motion to dismiss the petition on timeliness grounds is denied. Respondent is granted until June 22, 2007 to offer any additional opposition to the petition. Petitioner is given until July 23, 2007 to submit a reply, if any.

**SO ORDERED.**

Dated: Brooklyn, New York
May 17, 2007

ERIC N. VITALIANO
United States District Judge