UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
TERREL REILY,                                    :

                                    Petitioner,  :          **MEMORANDUM & ORDER**

                                                 :            06-CV-5402 (ENV)

            -against-                            :

ROBERT ERCOLE,                                   :

                                    Respondent.  :

-------------------------------------------------------------------- x

**VITALIANO, D.J.**

Pro se petitioner Terrel Reily is before the Court on his petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the writ is denied and

Reily's habeas petition is dismissed.

### BACKGROUND

On October 7, 1997, Hamish Stanley was shot in the head and killed in Brooklyn. An

eyewitness, Paulette Patterson, saw Reily point a gun in Stanley's face and then flee the scene of

the crime. In December 1999, Reily was arrested in California on an outstanding California

warrant. After being extradited to New York, petitioner was charged, under Kings County

Indictment Number 9795/99, with two counts of murder in the second degree in violation of

N.Y. Penal Law §§ 125.25[1], [2] and criminal possession of a weapon in the second and third

degrees in violation of N.Y. Penal Law §§ 265.03 and 265.02.

Also upon Reily's return to New York, eyewitness Patterson viewed petitioner in a

lineup–in the absence of defense counsel–and identified him as the man with the gun.

Challenged by the defense, following a hearing, the court suppressed this lineup because of

defense counsel's absence. Two more lineups were then conducted on September 6, 2000.

1

Defense counsel was present at each of them. At defense counsel's request, Reily was not included in the first lineup; the eyewitness identified one of the "fillers" instead. Immediately following the first lineup on September 6, 2000, a second lineup including Reily was conducted and, this time, the eyewitness identified petitioner as the man with the gun.

At pre-trial, prior to the commencement of the Wade[1] hearing, defense counsel made an ex parte request that independent counsel be assigned to defendant because counsel wanted to testify about his observations of the detective during the lineups in support of the defense contention that the detective had signaled the eyewitness to pick Reily. Defense counsel informed the court that after Reily was positioned in the lineup, he saw the detective tap his thigh with his notebook two times, which he believed signaled that the eyewitness should select the person in position two. At the request of counsel, Reily was subsequently placed in position three. Defense counsel claimed that the detective again tapped his notebook against his thigh, this time tapping three times. The court denied counsel's application to testify.

At the Wade hearing, the detective denied tapping his thigh with a notebook during the lineups. Defense counsel again requested permission from the court to call himself as a witness. His request was again denied. At the conclusion of the hearing, the court ruled that the two lineups held on September 6, 2000 were admissible.

Following a jury trial, Reily was convicted of murder in the second degree. On March 12, 2001, petitioner was sentenced to a prison term of 25 years to life. Petitioner appealed his conviction to the Appellate Division, Second Department, arguing that (1) the trial court erred in precluding defense counsel from testifying at the hearing on the defendant's motion to suppress identification testimony; (2) he was deprived of the effective assistance of counsel as a result of a

---

[1] See United States v. Wade, 388 U.S. 218, 224, 87 S. Ct. 1926, 1931 (1967).

conflict of interest, and the trial court erred in not conducting an inquiry as to the alleged conflict of interest; (3) the court erred in not making an independent source determination with regard to the first, suppressed lineup; (4) the evidence of his guilt was insufficient; and (5) the failure of the New York Police Department to secure an arrest warrant prior to questioning him was exploitative and required the suppression of his statements. In their response, the People confessed error, conceding that defense counsel should have been allowed to testify at the Wade hearing; the prosection requested that the Appellate Division hold the appeal in abeyance and remit the matter to Supreme Court for a hearing as to harmlessness.

On May 5, 2003, the Appellate Division ruled that the trial court "should have permitted the defense counsel to testify" and remitted Reily's case to Supreme Court "for further proceedings on that branch of the defendant's omnibus motion which was to suppress identification testimony." People v. Reily, 305 A.D.2d 430, 431, 759 N.Y.S.2d 178, 179 (2d Dep't 2003). The appeal was held in abeyance pending the hearing and issuance of a report. See id. After testimony from defense counsel, eyewitness Patterson, and the prosecutor who was present during the lineups, the hearing court found that the nonsuppressed lineups had not been suggestive and returned the case to the Appellate Division for review. Petitioner filed a post-hearing supplemental brief in which he argued that the hearing court's finding had been in error and that the trial court had improperly permitted defense counsel to represent him at trial. Nevertheless, the Appellate Division affirmed his conviction on December 20, 2004, having found that "[t]he evidence adduced at the suppression hearing support[ed] the Supreme Court's denial of that branch of the defendant's omnibus motion which was to suppress identification testimony." See People v. Reily, 13 A.D.3d 560, 560, 787 N.Y.S.2d 657, 658 (2d Dep't 2004). On March 4, 2005, the New York Court of Appeals denied Reily's application for leave to

appeal. See People v. Reily, 4 N.Y.3d 834, 829 N.E.2d 682, 796 N.Y.S.2d 589 (2005).

On September 29, 2006, Reily timely filed the instant petition. See Reily v. Ercole, No. 06-CV-5402, 2007 U.S. Dist. LEXIS 36889 (E.D.N.Y. May 21, 2007). He argues that (1) he was denied due process by the hearing court's refusal to allow defense counsel to testify at his pre-trial hearing and at his trial; (2) he received the ineffective assistance of counsel "as a result of a conflict of interest arising from counsel['s] being a necessary witness [o]n appellant's behalf"; (3) the trial court failed to conduct a proper inquiry to determine whether he had knowingly waived his counsel's conflict of interest; (4) the hearing court failed to make an independent source determination regarding the subsequent identification after suppressing the December 1999 lineup identification; (5) the evidence of his guilt was legally insufficient as a matter of law; and (6) the detective's failure to obtain an arrest warrant for him in New York, and his being interrogated without counsel (after his arrest in California), was "exploitative" and required the suppression of his statements.

## STANDARD OF REVIEW

As is well-engrained now, driven by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of 28 U.S.C. § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., for the Court, Part II) (citation omitted). Similarly, a federal court cannot issue the writ under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's

4

decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413, 120 S. Ct. at 1523. But, a state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility." Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003).

## DISCUSSION

The Appellate Division decided petitioner's identification-related claim on the merits and further held that "defendant's remaining contentions either are unpreserved for appellate review or without merit." People v. Reily, 13 A.D.3d at 561, 787 N.Y.S.2d at 658. Under Jimenez v. Walker, "[s]uch an 'either/or' decision is deemed to rest on the merits . . . because there is no plain statement to the contrary." 458 F.3d 130, 146 (2d Cir. 2006). Jimenez went on to observe that "when a state court uses language such as '[t]he defendant's remaining contentions are either unpreserved or [as opposed to "and"] without merit,' the validity of the claim is preserved and is subject to federal review. [Stated differently, w]hen [a court] uses such language, the state court has not adequately indicated [on the face of its opinion] that its judgment rests on a state

procedural bar." Id. at 139. Following the Appellate Division's use of such ambiguous language, Reily raised these claims in his unsuccessful application for leave to appeal to the New York Court of Appeals. As a result, the Court will construe all of his claims to have been exhausted (preserved and adversely determined on the merits) at all necessary state levels and will, ceteris paribus, apply the appropriate AEDPA standard of review in analyzing them.

A.    Due Process Claim

Reily claims that he was denied a fair trial and due process of law by the state court's refusal to allow defense counsel to testify at his Wade hearing and at trial. The Appellate Division held, as the People conceded, that it "was error" for the trial court to have denied defense counsel's request to testify, Reily, 305 A.D.2d at 431, 759 N.Y.S.2d at 179, but, upon reviewing the results of the trial court's hearing report, that reversal was not warranted. See Reily, 13 A.D.3d 560, 787 N.Y.S.2d 657.

The Court finds that the Appellate Division's ultimate rejection of this claim was not contrary to, or an unreasonable application of, the Fourteenth Amendment and federal law. As the Appellate Division recognized clearly, it was constitutional error to deny counsel's request to testify. It is well-established that "[t]he right to a fair trial [] [is] guaranteed to state criminal defendants by the Due Process Clause of the Fourteenth Amendment . . . ." Ramchair v. Conway, 601 F.3d 66, 73 (2d Cir. 2010) (citing Cone v. Bell, 129 S. Ct. 1769, 1772 (2009)). Petitioner "was denied the opportunity to present a crucial witness in his own defense in connection with the central issue in his case -- the fairness of the lineup which was the sole basis for his identification as the perpetrator of the crime with which he was charged." Ramchair, 601 F.3d at 73. However, such error does not equate to automatic reversal. While there are "some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless

6

error," it is certainly not the case that "all trial errors which violate the Constitution automatically call for reversal." Chapman v. California, 386 U.S. 18, 23, 87 S. Ct. 824, 827-28 (1967). See also id. at n.8 (cataloging examples of errors that can never be harmless (citing Payne v. Arkansas, 356 U.S. 560, 78 S. Ct. 844 (1958) (coerced confession); Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792 (1963) (right to counsel); Tumey v. Ohio, 273 U.S. 510, 47 S. Ct. 437 (1927) (impartial judge))). To the contrary, evidentiary rulings—like the trial court's ruling in this case—that give rise to a due process violation, are still subject to harmless error analysis. See, e.g., Fry v. Pliler, 551 U.S. 112, 127 S. Ct. 2321 (2007) (applying harmless error review after finding that the trial court's exclusion of a defense-witness led to an unfair trial); Lilly v. Virginia, 527 U.S. 116, 119 S. Ct. 1887 (1999) (remand for harmless error analysis after finding that admission of the co-defendant's statements was a due process violation); Crane v. Kentucky., 476 U.S. 683, 106 S. Ct. 2142 (1986) (remand for harmless error analysis after finding that defendant was not given a fair opportunity to present a defense).

Here, the Appellate Division effectively decided that the constitutional error was harmless. Although the Second Department did not explicitly label its post-remittal review a harmless error analysis, no other conclusion can be drawn from the record. Specifically, at the top of the direct appeal briefing, the People conceded error and the Appellate Division agreed that the trial court "should have permitted the defense counsel to testify." Reily, 305 A.D.2d at 431, 759 N.Y.S.2d at 179. The court then remitted Reily's case to Supreme Court "for further proceedings on that branch of the defendant's omnibus motion which was to suppress identification testimony." Id. Having already found error, the remittal to the trial court could have been for no other purpose than a determination of whether the error prejudiced the defendant. Similarly, the Second Department's subsequent affirmance of the judgment, after

previously concluding that there was in fact error and remitting to the trial court for a fact hearing, is the practical equivalent of an express finding that the error was harmless.

"Where a state appellate court has found that a state trial court committed a constitutional violation but has held that the violation was harmless, the standard of review for a federal court conducting habeas corpus review has not yet been clearly established." Perkins v. Herbert, 596 F.3d 161, 175 (2d Cir. 2010). One approach, which is founded in the Supreme Court's decision in Brecht v. Abrahamson, 507 U.S. 619, 113 S. Ct. 1710 (1993), requires the federal court reviewing the petition to conduct an independent analysis of whether the constitutional error prejudiced the defendant or had a "substantial and injurious" effect on the process resulting in conviction. The alternative approach takes AEDPA deference into account and requires that the federal habeas court merely decide whether the state court applied harmless-error review in an "objectively unreasonable manner." See Mitchell v. Esparza, 540 U.S. 12, 124 S. Ct. 7 (2003). While other circuits are split on the issue, the Second Circuit has declined to decide which standard should apply. Id. ("For present purposes and in keeping with Second Circuit precedent, we now 'decline [] to decide the question because we conclude [] that the result [is] the same under either test.'" (quoting Brown v. Keane, 355 F.3d 82, 91 (2d Cir. 2004))); cf. Johnson v. Acevedo, 572 F.3d 398, 404 (7th Cir. 2009) (holding that the federal court must ask whether the state court applied federal law unreasonably when finding that the error was harmless beyond a reasonable doubt); Ruelas v. Wolfenbarger, 580 F.3d 403, 412-13 (6th Cir. 2009) (holding that the federal court must independently determine whether the error had a substantially injurious effect on the jury's verdict). With these dueling views as backdrop, and following Second Circuit precedent, the Court will determine whether the constitutional error here was harmless under both the Brecht and AEDPA/Chapman tests. Either way, the same target remains in the

cross hairs, that is, whether the trial court's refusal to allow defense counsel to testify resulted in "actual prejudice" to Reily, and only then whether the Appellate Division "acted unreasonably in finding harmlessness." Perkins, 596 F.3d at 177 (internal quotations and citations omitted).

Under the Brecht approach, Reily can succeed only if, on the totality of the record, the error is prejudicial. Pointedly, habeas relief is only appropriate if the error below "had substantial and injurious effect or influence" on defendant's conviction. Brecht, 507 U.S. at 638, 113 S. Ct. at 1712. This standard was intended to be lower for the prosecution than the traditional Chapman test used on direct review, requiring the error be "harmless beyond a reasonable doubt." Id. Applying the Brecht standard here, the Court finds that the error committed by the trial court was indeed harmless. Consistent with the findings of the trial court and the Appellate Division, the refusal to allow defense counsel to testify as to his uncorroborated perception of a signal by the detective during the lineup identification showings, did not have a "substantial and injurious effect" on the process leading to Reily's conviction.

First off, the error in no way impaired defense counsel's ability to cross-examine the witnesses who did testify concerning Reily's third lineup. Indeed, if anything, by counsel's presence at the lineup, his ability to cross-examine vigorously those witnesses was enhanced. More importantly, all that counsel's testimony could challenge was the detective's testimony that he did not tap his thigh with a notebook much less do so with the intent to signal the viewing witness. As substantiated at the hearing conducted by Supreme Court on the remittal from the Second Department in connection with the Appellate Division's consideration of the direct appeal, counsel's testimony would in no way have challenged the eyewitness's account of that lineup. Despite the vigorous cross-examination, eyewitness Patterson unequivocally testified that she did not see or hear the detective performing the acts counsel would have testified he saw

9

the detective, not the eyewitness, perform. (Supplemental Brief for Defendant-Appellant, Exhibit C at 7-8). Further, the defense never contested the lineup procedure followed on September 6, 2000 as being otherwise suggestive in any way; procedure so fair, in fact, they resulted in the first round identification of someone other than petitioner. Again, all that defense counsel sought to testify about was his perception that a detective attempted to subvert the lineup procedure by a thigh-tapping signal. Defense counsel did not proffer that he had observed the witness acting as if she recognized the signal in any way or that such a signal had been pre-arranged or, indeed, that there was any objective evidence whatsoever that the physical actions of the detective he claims to have seen was a signal. At bottom, the proffered testimony of defense counsel, at best, would have challenged the credibility of the detective as to whether he attempted to signal Patterson. The unheard testimony left untouched the eyewitness's flat denial that a signal from the detective had ever been arranged.

Restated simply, as the state courts found as a matter of fact, Patterson was unaware of any of the alleged signals complained of by defense counsel. (Supplemental Brief for Defendant-Appellant, Exhibit C at 8). In fact, the trial court's primary task during this post-trial hearing ordered by the Second Department was to assess the credibility of the parties, which resulted in the trial court's explicit finding that Patterson was not aware of, nor influenced by, any alleged statements or actions of the detective. Id. This factual finding is presumptively correct under AEDPA but, it is clear, that, notwithstanding the presumption, the truth of Patterson's testimony on this score has not been rebutted by petitioner, even expressly taking into account defense counsel's testimony at the remittal hearing. See 28 U.S.C. § 2254. On this canvas, the conclusion of the state courts that any error—constitutional or otherwise—in not allowing defense counsel to testify was harmless, is correct. The failure to allow testimony

about "the signal" that was, according to the totality of the evidence, unobserved by the eyewitness, was not prejudicial nor did it undermine the conclusion that the lineup procedure was not impermissibly suggestive. Given that the Court finds, independently of any state court determination, that there was no substantial (if any) effect on the trial which resulted in conviction, the Court further finds that Reily did not suffer any actual prejudice as a result of the error.[2]

Having found no reversible error under Brecht, the Court also concludes that the Appellate Division's similar determination was correct, and certainly not "objectively unreasonable." The AEDPA/Chapman approach was first outlined in Mitchell and requires a federal court to determine whether the state court "acted reasonably in determining that the error was 'harmless . . . beyond a reasonable doubt.'" Perkins, 596 F.3d at 175 (quoting Mitchell, 540 U.S. at 17-19, 124 S. Ct. at 11-12). The Court may not grant habeas relief "if the state court simply erred in concluding that the State's errors were harmless." Id. at 176. Rather, the Court must find that the state court's decision was "objectively unreasonable." Id. "[T]he most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Williams, 529 U.S. at 410, 120 S. Ct. at 1522. "Petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Sorto v. Herbert, 497 F.3d 163, 169 (2d Cir. 2007). Applying this standard to the case at bar, it is clear that petitioner has not carried this burden. There is more than enough in the record before this Court to conclude that the Appellate Division's finding of harmlessness beyond a reasonable

---

[2] Lost in the smoke of the trial court's error in refusing to allow defense counsel to testify as to his perception of the detective's subversion of the lineup is the fact that the eyewitness misidentified the perpetrator. There was, in other words, far more damning evidence regarding the reliability of Patterson's identification of Reily. In the end, the jury believed Patterson's unchallenged testimony that she was unaware of any attempted signal by the detective and also that her subsequent identification of petitioner was the reliable one, as opposed to her earlier identification of someone else that she recanted at trial.

doubt was not "objectively unreasonable." Either way, therefore, a writ may not issue on this ground.

B.    Ineffective Assistance of Counsel and Conflict of Interest

Reily contends next, relatedly, that he was denied the effective assistance of counsel because of a conflict of interest arising from the fact that trial counsel was a necessary witness. He further contends that the trial court failed to conduct a proper inquiry to determine whether Reily had knowingly waived this conflict of interest.

It is well established that "[a] defendant's right to counsel under the Sixth Amendment includes the right to be represented by an attorney who is free from conflicts of interest." United States v. Kliti, 156 F.3d 150, 153 (2d Cir. 1998) (citing Wood v. Georgia, 450 U.S. 261, 271, 101 S. Ct. 1097, 1103 (1981); Holloway v. Arkansas, 435 U.S. 475, 481-82, 98 S. Ct. 1173, 1177-78 (1978); United States v. Levy, 25 F.3d 146, 156 (2d Cir. 1994)). See also Wood, 450 U.S. at 271, 101 S. Ct. at 1103 ("Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."); Holloway, 435 U.S at 490, 98 S. Ct. at 1181 ("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters."). "[A]ssistance which is ineffective in preserving fairness does not meet the constitutional mandate; and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 535 U.S. 162, 166, 122 S. Ct. 1237, 1240 (2002) (citing Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052 (1984)). In accord with controlling precedent, petitioner can establish ineffective assistance of counsel in violation of his Sixth Amendment rights by showing (1) a per se conflict, (2) an actual conflict that adversely

12

affects counsel's performance, or (3) a potential conflict that results in actual prejudice. See Armienti v. United States, 234 F.3d 820, 823-24 (2d Cir. 2000). Here, the Court finds that the Appellate Division's determination of Reily's ineffective assistance of counsel claim did not run afoul of any clearly established Supreme Court precedent.

To begin, there is surely no per se conflict. "Per se conflicts are limited to situations where trial counsel is not authorized to practice law . . . or is implicated in the very crime for which his or her client is on trial." Armienti, 234 F.3d at 823. Nothing in the record supports such a finding. There is also no actual conflict. An actual conflict arises when, during "the course of the representation, the defendants' interests . . . diverge with respect to a material fact or legal issue or to a course of action." Kliti, 156 F.3d at 153, n.3 (internal quotations and citations omitted). Notably, actual conflict has only been recognized to exist in a handful of conflict scenarios. See, e.g., United States v. Malpiedi, 62 F.3d 465 (2d Cir. 1995) (actual conflict when attorney avoided cross-examination of a former client who testified against current client); United States v. Fulton, 5 F.3d 605 (2d Cir. 1993) (actual conflict when attorney was engaged in drug trafficking which related to the charge for which defendant was on trial); United States v. McLain, 823 F.2d 1457, 1463-64 (11th Cir. 1987) (actual conflict when counsel, unbeknownst to defendant, had been under investigation for bribery); United States v. Ellison, 798 F.2d 1102, 1106-08 (7th Cir. 1986) (actual conflict between lawyer and client when pursuit of client's interests would lead to evidence of attorney's malpractice), cert. denied, 479 U.S. 1038, 107 S. Ct. 893 (1987). Reily's conflict claim is not cut from this soiled cloth; it does not present "[a] situation in which the attorney's own interests diverge[d] from those of the client." See, e.g., United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993). To the contrary, the source of the conflict was defense counsel's request to be relieved so that he could testify as a witness on

behalf of his client. When that request was denied by the court there was no conflict presented by his continued representation of petitioner. Indeed, at no point did defense counsel's own interests ever diverge from Reily's.

Finally, there was no potential conflict of interest. A potential conflict arises "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." Kliti, 156 F.3d at 153 n.3 (internal quotations and citations omitted). The potential conflict alleged by petitioner in this case is the possibility that defense counsel would serve as a witness regarding his observations at the lineup. This, of course, was never a potentiality. The possible need for counsel to testify was disclosed and disposed of prior to trial. And, the request always included relieving counsel if the request to testify was ever granted. There was never a possibility (nor a request) that counsel would serve as lawyer and witness; there was never the prospect that Reily's counsel would be under any inconsistent duties during his representation of petitioner.

But even assuming that a potential conflict of interest survived the trial court's denial of defense counsel's request to testify on his client's behalf, Reily's petition still fails on this ground because he has made no showing of prejudice or adverse effect. See Montano v. United States, No. 96-CV-6206, 1999 U.S. Dist. LEXIS 9591, at *7 (D.N.Y. 1999) (petitioner "must demonstrate that he was prejudiced in order to prove that the conflict deprived him of his Sixth Amendment right to effective assistance of counsel."). Petitioner has not and cannot make any such showing of prejudice. As noted above, the trial court's due process error in refusing to permit defense counsel to testify about his perception that the detective was attempting to signal the eye witness at the lineup was harmless. For the same reasons, notwithstanding defense counsel's vigorous efforts to testify, defense counsel's failure to testify and subsequent

14

continuation as petitioner's counsel does not satisfy the prejudice prong. Nor do the contentions made by Reily present a claim where prejudice can be presumed.[3] Since there is no prejudice, presumed or otherwise demonstrated, Reily's conflict claim fails. There is no basis, with or without AEDPA deference, to disturb the state court's judgment which reached exactly the same conclusion.

His secondary claim that the trial court failed to conduct a proper inquiry to determine whether Reily knowingly waived the alleged conflict of interest also of necessity fails. "If, as a result of its inquiry, the court concludes that there is no conflict, and therefore no need to disqualify the attorney or to hold a Curcio[4] hearing, a defendant's claim that such a conclusion was in error will not establish a violation of the Sixth Amendment right to effective assistance of counsel unless the defendant can demonstrate that the attorney had either (1) a potential conflict of interest that resulted in prejudice to the defendant, or (2) an actual conflict of interest that adversely affected the attorney's performance." Kliti, 156 F.3d at 153. In light of the Court's finding that there was no actual or potential conflict that resulted in prejudice, the trial court's failure to conduct a Curcio hearing was, similarly, not a violation of Reily's Sixth Amendment rights.

This conclusion is reinforced when taking account of the lens through which the Court

---

[3] See Strickland, 466 U.S. at 692, 104 S. Ct. at 2067 (discussing circumstances—none of them applicable here—in which prejudice is presumed and noting further that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" (quoting Cuyler v. Sullivan, 446 U.S. 335, 345-350, 100 S. Ct. 1708, 1716-19 (1980))); accord Smith v. Robbins, 528 U.S. 259, 287, 120 S. Ct. 746, 765 (2000). See generally Mickens, 535 U.S. 162 (citing cases concerning conflicts of interest in situations of joint representation or where a defendant is spared "the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. . . . But only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." (citing United States v. Cronic, 466 U.S 648, 659, 104 S. Ct. 2039, 2047 n.26 (1984))).
[4] A Curcio hearing is conducted "to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation." Kliti, 156 F.3d at 153; see also United States v. Curcio, 680 F.2d 881 (2d Cir. 1982).

15

must evaluate Reily's claim of conflict. Pursuant to AEDPA, the petition can only be granted if the Appellate Division's finding of the absence of a Sixth Amendment violation resulting from the claimed conflict of interest is an "unreasonable" application of federal law. Cox, 387 F.3d 193, 200 (2d Cir. 2004). It is undisputed that petitioner raised this identical conflict claim on appeal to the Appellate Division and the state court found it to be without merit. Given the deferential standard of habeas review under AEDPA, the Court simply cannot conclude that the Appellate Division's decision on these facts ran contrary to, or was an unreasonable application of, federal law. The Curcio-adjunct to Reily's ineffective assistance of counsel claim is, as a consequence, dismissed.

C.    Independent Source Determination

Petitioner assigns other errors, including his argument that the trial court failed to make an independent source determination regarding the trial identification, after suppressing the results of the December 1999 lineup, at which the eyewitness identified Reily as the man with the gun. The claim as raised on direct appeal (and renewed in Reily's habeas petition) is, however, grounded in state law and therefore procedurally barred. In any case, if construed as raising a federal claim, the Court finds that the trial court's failure to hold an independent source hearing, and the Appellate Division's affirmance, were not contrary to, or an unreasonable application of, federal law.

At the outset, to be clear, there is no constitutional right to an independent source hearing regarding identification evidence admitted at trial. See Watkins v. Sowders, 449 U.S. 341, 349, 101 S. Ct. 654, 659 (1981) ("A judicial determination outside the presence of the jury of the admissibility of identification evidence may often be advisable. . . . But it does not follow that the Constitution requires a per se rule compelling such a procedure in every case."). Rather,

"reliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite, 432 U.S. 98, 114, 97 S. Ct. 2243, 2253 (1977). The fact that the trial court did not specifically hold an independent source hearing does not in and of itself violate any established federal right. Moreover, it is clear from the record made at the pre-trial hearings, that the trial court did conduct an adequate inquiry into whether the first suppressed lineup tainted the subsequent lineups. Satisfied that Patterson's identification was reliable at threshold and did not violate petitioner's due process rights, the court admitted her identification testimony at trial. Petitioner's claim that error was committed because something labeled an independent source hearing was not conducted is without merit.

Furthermore, the Court finds that the eyewitness's identification of Reily was constitutionally reliable in light of the Supreme Court's analysis in Neil v. Biggers, 409 U.S. 188, 93 S. Ct. 375 (1972). "It is the likelihood of misidentification," the Court held, "which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." Biggers, 409 U.S. at 198, 93 S. Ct. at 381-82 (citing Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 971 (1968)). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Id. Yet, even if Patterson's identification of Reily at the third lineup was tainted by a prior suppressed lineup making the entire identification procedure unnecessarily and impermissibly suggestive, the next step is not suppression of the identification; it is to determine whether, "under the 'totality of the circumstances[,]' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199, 93 S. Ct. at 382; see also Abdur Raheem v. Kelly, 257 F.3d 122, 133

17

(2d. Cir. 2001) ("In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." (citations omitted)). As the Supreme Court has established, the factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200, 93 S. Ct. at 382.

Pointedly, even if the subsequent identification of petitioner by the eyewitness had been tainted by the first lineup, the trial court, rejecting the claim of sabotage, found that the lineups were not impermissibly suggestive. There is no dispute that on remittal the trial court conducted a thorough hearing, considering the previously excluded testimony of defense counsel as well as the renewed testimony of eyewitness Patterson and of the prosecutor who was present at the lineups. (Respondent's Supplemental Brief, Exhibit D at 2-4). Defense counsel was permitted to testify freely about any and all defects he perceived in the lineup procedure. In the end, the trial court unequivocally concluded not only that "Patterson did not see or hear the actions of Detective Smith," but, ultimately, that "[d]efendant failed to show, by a preponderance of the evidence, that the procedure was suggestive." (Supplemental Brief for Defendant-Appellant, Exhibit C at 8). There is nothing in the record to contradict this finding. In fact, the Court's review of the record reveals that there is compelling support for the trial court's conclusion that the lineups were not suggestive and effectively free of any Biggers taint.

Specifically, Patterson, it reveals, had ample opportunity to observe Reily from across the street as he pointed a gun in Stanley's face. Her degree of awareness as to what was happening, it is more than reasonable to infer, would certainly have been high, in part because she was

18

walking with her child across the street from a man displaying a firearm. Although she misidentified a "filler" as the assailant, after the "filler" lineup, Patterson did identify Reily as the man with the gun when he was actually present in the third lineup. Furthermore, the Court finds that any taint flowing from the intervening first identification was erased by the nine-month gap between the first and last lineups. See Simmonds v. Kuhlman, No. 97-CV-7539, 2000 U.S. Dist. LEXIS 17898, at *12 (E.D.N.Y. Dec. 7, 2000) ("[A] twenty month interval passed between the photographic procedure and the lineup identification procedure so that any possible taint would likely have been attenuated to such a degree as not to have affected the admissibility of the lineup identification."); see also Butts v. Walker, No. 01-CV-5914, 2003 U.S. Dist. LEXIS 20455, at *15 (E.D.N.Y. Nov. 6, 2003) (agreeing with the hearing court below "that any suggestiveness in the photo array was rendered harmless by the fact that [witness] picked [petitioner] out of lineup six weeks later"). Perversely for petitioner's argument here, although providing heavy ammunition for his argument to the jury that Patterson's ultimate identification was unreliable, the fact that she selected a "filler" as the assailant is highly probative of the conclusion that the suppressed first lineup did not taint Patterson's identification of Reily at the third lineup, i.e., she had selected someone else between the two.

Under the totality of the circumstances, the Court finds no error in the state court's adverse determination on petitioner's contention that he was the victim of an impermissibly suggestive identification process; cf. Jimenez, 458 F.3d at 147, and if it be error, it certainly does not rise to the level required under AEDPA. AEDPA deference instructs that Reily can only succeed if the Appellate Division's decision "represents an 'unreasonable,' not simply incorrect or erroneous, application of federal law." Cox, 387 F.3d at 200 (citing Williams, 529 U.S. at 412, 120 S. Ct. at 1523). In making its determination, the state court's decision must be

19

evaluated by the Court to see whether it "reflect[s] some additional increment of incorrectness such that it may be said to be unreasonable." Id. (citing Aparicio, 269 F.3d at 94). Here, it simply does not and a writ may not be issued as a result.

D.    Insufficient Evidence Claim

Reily contends that, notwithstanding the Appellate Division's determination to the contrary, the evidence of his guilt was legally insufficient as a matter of law. But, Reily has failed to show that the challenged state court determinations were contrary to, or an unreasonable application of, Supreme Court precedent, and specifically, the standard for insufficiency of evidence announced in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781 (1979).

In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution," and the applicant is entitled to habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence adduced at trial. Flowers v. Fisher, 296 F. App'x 208, 210 (2d Cir. 2008) (citing Jackson, 443 U.S. at 324, 326, 99 S. Ct. at 2791-93). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326, 99 S. Ct. at 2793). Given that a reviewing court may not substitute its judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). Surely, Reily has not come close to meeting this burden, regardless whether the review is conducted on a deferential or de novo basis. There being no

evidence of Reily's actual innocence, and in light of, among other evidence, the testimony given by Patterson, Elisha James (who saw the getaway car), and Seon Clarke (who was compensated by Reily for his shot finger in an incident occurring at the same location where Stanley was killed), the claim is meritless.

E.    Arrest/Interrogation in California

Finally, petitioner argues that the failure to obtain an arrest warrant in New York, and his being interrogated without counsel (in the aftermath of his arrest in California), was "exploitative" and required the suppression of his statements. To start, there is no requirement that New York police procure a New York arrest warrant before interrogating a suspect in California. Regardless, petitioner seems to argue that the failure to obtain a New York warrant was an intentional design to deprive him of his right to counsel. Petitioner argues that if an arrest warrant had been obtained, his right to counsel would immediately have attached and, derivately, no waiver would have been possible without the presence of counsel. Putting aside how nonsensical the argument (the right to counsel is almost invariably waived in the absence of counsel), petitioner does not, in any case, cross the habeas threshold because his claim is grounded solely in an alleged violation of New York state law, which, assuming arguendo, requires a warrant in these circumstances. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). As a result, this theory affords no basis for federal habeas relief.

There has also been no claim by petitioner that he was unlawfully arrested in California, thereby implicating a potential Fourth Amendment claim. The Los Angeles Police Department acted on a valid warrant for Reily's arrest for violation of probation and there is no suggestion

that his resulting detention was somehow unconstitutional. Additionally, petitioner waived extradition, prompting his return to New York.

The only other federal claim that can possibly be construed from Reily's petition is that his custodial interrogation was somehow unlawful under Miranda v. Arizona. See 384 U.S. 436, 86 S. Ct. 1602 (1966). However, Reily clearly did not present a Miranda claim to the Appellate Division on direct appeal. Indeed, Reily, in his brief to the Second Department eschewed Miranda and relied solely upon state law in advancing his claim, meaning that he did not alert the Appellate Division to the federal nature of his claim. See Baldwin v. Reese, 541 U.S. 27, 29, 124 S. Ct. 1347-49 (2004); see also Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003) ("The claim presented to the state court . . . must be the 'substantial equivalent' of the claim raised in the federal habeas petition." (citations omitted)); Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (listing the "ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim"). Because it had not been so alerted by petitioner, the Appellate Division had neither reason nor "fair opportunity" to consider federal law in assessing the claim. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 844-45, 119 S. Ct. 1728, 1732 (1999); see also Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 512 (1971) (noting the policy of federal-state comity, which is "an accommodation of our federal system designed to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights" (internal quotation marks and citations omitted)); Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (stating, in a case concerning how raising a state evidentiary claim was insufficient to raise a federal due process claim, that, in determining whether a federal claim has been fairly presented, the focus should be on the degree of similarity between claims before the state court and before the federal court (citation omitted)). Because the Appellate Division did

not have a fair opportunity to consider Reily's federal constitutional claim—if any—this claim is, indeed, unexhausted at the state appellate level. See Baldwin, 541 U.S. at 33, 124 S. Ct. at 1351-52; Duncan v. Henry, 513 U.S. 364, 365-66, 115 S. Ct. 887, 888 (1995) (per curiam); Anderson v. Harless, 459 U.S. 4, 6-8, 103 S. Ct. 276, 277-78 (1982) (per curiam); Petrucelli v. Coombe, 735 F.2d 684, 690 (2d Cir. 1984); see also 28 U.S.C. § 2254(b). Since such a claim is unexhausted, and since any attempt now to present this claim in a New York state court would be procedurally barred by petitioner's failure to raise it on direct appeal, renders Reily's interrogation-related contention not amenable to federal habeas review. See, e.g., Coleman v. Thompson, 501 U.S. 722, 731-32, 111 S. Ct. 2546, 2554-55 (1991); Teague v. Lane, 489 U.S. 288, 297, 109 S. Ct. 1060, 1068 (1989); DiGuglielmo v. Smith, 366 F.3d 130, 134-35 (2d Cir. 2004); Bossett v. Walker, 41 F.3d 825, 828-29 (2d Cir. 1994).

Assuming, arguendo, that petitioner's putative Miranda claim was fairly presented and ripe for habeas determination on its merits, it fails nonetheless. The record is devoid of any evidence that Reily's Miranda rights were violated. In fact, Detective Smith testified at trial that he read Reily the requisite Miranda warnings before he questioned him and Reily signed the sheet containing the Miranda warnings. As such, petitioner's claim affords no basis for this Court to grant federal habeas relief.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus of Terrel Reily is dismissed and the writ is denied. Nevertheless, the Court issues a Certificate of Appealability on petitioner's due process and ineffective assistance of counsel claims only, since reasonable jurists could disagree on these grounds as to whether Reily's petition should have been resolved differently.

See <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04 (2000). The Court further grants <u>in forma pauperis</u> status for the purpose of any appeal.

The Clerk is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

**SO ORDERED.**

Dated: Brooklyn, New York
      November 30, 2010

ERIC N. VITALIANO
United States District Judge